UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE:

CHRISTOPHER SCOTT SEHMAN     CASE NO.: 21-30141-KKS
                                                                 CHAPTER: 11
                                                                 SUBCHAPTER V

    Debtor.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF *ORDER GRANTING DEBTOR'S MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY (DOC 56)* (ECF NO. 85)

THIS MATTER came before the Court for hearing on June 9, 2021 on *Debtor's Motion for Sanctions for Violation of the Automatic Stay* ("Motion for Sanctions," ECF No. 56). On June 11, 2021, the Court entered an *Order Granting Debtor's Motion for Sanctions for Violation of the Automatic Stay (Doc. 56)* ("Sanctions Order").[1] The Court now issues these Findings of Fact and Conclusions of Law as set forth in, and in support of, the Sanctions Order pursuant to Fed. R. Civ. P. 52(a)(1) applicable by Fed. R. Bankr. P. 7052.[2]

On April 29, 2021, Debtor, Christopher Scott Sehman, filed an

---

[1] ECF No. 85.
[2] Fed. R. Bankr. P. 7052 is applicable in this matter pursuant to Fed. R. Bankr. P. 9014(c).

NJM

emergency motion to enforce the automatic stay.[3] That same day Debtor filed the Motion for Sanctions.[4] The Court held an emergency hearing on both motions on May 4, 2021. At the conclusion of that hearing the Court granted Debtor's Emergency Stay Motion and continued the hearing on the Motion for Sanctions.[5]

In his Motion for Sanctions, Debtor requests that this Court: 1) hold William Todd Schweizer ("Schweizer") and 4 Dakota Ventures, LLC, ("4 Dakota") in contempt for willful violation of the automatic stay; 2) hold attorneys Robert O. Beasley and Dewitt D. Clark, and their law firm, Litvak Beasley Wilson & Ball, LLP (collectively "the attorneys"), in contempt for willful violations of the automatic stay; and 3) award Debtor actual damages, costs, attorney fees and punitive damages against Schweizer, 4 Dakota, and the attorneys.[6] For the reasons stated below,

---

[3] *Debtor's Emergency Motion to Enforce the Automatic Stay*, ECF No. 57 ("Emergency Stay Motion").

[4] 4 Dakota filed its brief in opposition to the Motion for Sanctions on May 28, 2021; Debtor filed his reply on June 1, 2021. *Plaintiff* [sic] *4 Dakota Ventures, LLC's Legal Brief in Opposition to Christopher Sehman's Motion for Sanctions [Doc. 56]*, ECF No. 78; *Debtor's Reply to 4 Dakota Ventures, LLC's Legal Brief in Opposition to Motion for Sanctions (Doc. 78)*, ECF No. 79.

[5] *Order Granting Debtor's Emergency Motion to Enforce the Automatic Stay (Doc. 57)*, ECF No. 69.

[6] Debtor claims that 4 Dakota is Schweizer's alter ego; he urges the Court to assess damages against Schweizer for 4 Dakota's willful stay violations on the basis that Schweizer controls, directly or indirectly, 4 Dakota. In the Sanctions Order the Court reserved ruling on Debtor's allegations as to Schweizer, so those are not addressed in these Findings of Fact and Conclusions of Law. *See* ECF 85, ¶4.

2

the Court finds that 4 Dakota and the attorneys willfully violated the automatic stay.

## FINDINGS OF FACT

The facts material to the instant Motion for Sanctions stem from two (2) lawsuits involving Debtor. In one suit, Debtor is a defendant (the "District Court Action"); in the other suit, Debtor is the plaintiff (the "Schweizer Lawsuit").[7]

The District Court Action began in February of 2015 when Synovus Bank sued Debtor and others in the United States District Court for the Northern District of Florida.[8] On October 30, 2015, the district court entered a $300,000.00 stipulated final deficiency judgment against Debtor and others in favor of NWE16, LLC ("NWE16"), successor to Synovus Bank ("Final Judgment").[9]

---

[7] The attorneys represent 4 Dakota in the instant action, the District Court Action, and the Schweizer Lawsuit. The Court takes judicial notice of the allegations in the pleadings filed in those cases: *4 Dakota Ventures, LLC v. Seger Com. Props. LLC,* Case No. 3:15-cv-51MCR/EMT (N.D. Fla. 2015) and *Sehman v. Schweizer*, Case No. 2018 CA 02080 F (Fla. 1st Cir. Ct. 2018). Fed. R. Evid. 201; *Paez v. Sec., Fla. Dep't Corrs.*, 947 F.3d 649, 651–52 (11th Cir. 2020) (Fed. R. Evid. 201 permits courts to take judicial notice of other court dockets and the pleadings filed within); *see also, ACG S. Ins. Agency, LLC v. Safeco Ins. Co.*, No. 18:19-cv-528-T-36AAS, 2019 WL 8273657, at *4–5 (M.D. Fla. Dec. 6, 2019). The parties have filed copies of some pleadings from each of these lawsuits in this case.

[8] *Complaint*, *4 Dakota Ventures, LLC v. Seger Com. Props. LLC*, Case No. 3:15-cv-51MCR/EMT (N.D. Fla. Feb. 13, 2015), ECF No. 1.

[9] NWE16 was substituted as plaintiff for Synovus Bank in July of 2015. *Referral and Order*, *4 Dakota Ventures, LLC v. Seger Com. Props. LLC*, Case No. 3:15-cv-51MCR/EMT (N.D. Fla. July 17, 2015), ECF No. 37. The Final Judgment was a result of a joint motion filed in the

3

On June 11, 2018, Debtor filed the Schweizer Lawsuit in Florida state court.[10] There, he sued Schweizer for over $1.5 million claiming, among other things, that Schweizer failed to perform under a purchase and sale agreement intended to allow Debtor to restructure his business operations.[11] According to Debtor, that agreement provided, in part, for Schweizer to pay $40,000.00 to NWE16 in exchange for a satisfaction and release of the Final Judgment against Debtor.[12] The parties never consummated the purchase and sale agreement.

Schweizer did not obtain a release or satisfaction of the $300,000.00 Final Judgment against Debtor. Instead, on August 23, 2018, 4 Dakota, a company that Schweizer previously owned and controlled, took an assignment of the Final Judgment from NWE16.[13] Debtor claims that Schweizer orchestrated the assignment, rather than release, of the Final Judgment so that he, under the guise of 4 Dakota, could be a judgment

---

District Court Action. 4 Dakota's *Proof of Claim 4-1*, at Part 2; *Final Judgment of Deficiency, 4 Dakota Ventures, LLC v. Seger Com. Props. LLC*, Case No. 3:15-cv-51MCR/EMT (N.D. Fla. Oct. 30, 2015), ECF No. 44.

[10] *Sehman v. Schweizer*, Case No. 2018 CA 02080 F (Fla. 1st Cir. Ct. 2018).

[11] ECF No. 56, ¶ 3; *Debtor's Status Report*, ECF No. 55, p. 1.

[12] ECF No. 56, ¶ 9. Debtor alleges that NWE16 had agreed to accept $40,000.00 in full satisfaction of its $300,000.00 Final Judgment. *Id.* at ¶ 10.

[13] 4 Dakota's *Proof of Claim 4-1,* at Part 3. 4 Dakota's corporate filings list Schweizer as a manager until June 26, 2018. *Complaint*, Ex. A at pp. 1–3, *Sehman v. 4 Dakota Ventures, LLC*, Case No. 21-30141-KKS, Adv. No. 21-03005-KKS (Bankr. N.D. Fla. May 3, 2021), ECF No. 1-2. Joshua T. Schweizer was added as a manger of 4 Dakota on April 29, 2018; Schweizer was removed as a manager and replaced by Brenda M. Will on June 26, 2018. *Id.* at pp. 2–3.

4

creditor of Debtor.[14]

After NWE16's assignment of the Final Judgment to 4 Dakota, the district court substituted 4 Dakota as Plaintiff in the District Court Action.[15] 4 Dakota then began pursuing post-judgment collection remedies against Debtor.[16] Debtor did not respond to 4 Dakota's collection motions in the District Court Action.[17] Debtor claims his lack of response was because he did not have and could not afford counsel; 4 Dakota vehemently disagrees.[18]

On January 15, 2021, the district court entered an order "granting execution" in favor of 4 Dakota and assigning to 4 Dakota all of Debtor's "right, title and interest" in and to the Schweizer Lawsuit ("Assignment Order").[19] The Assignment Order, provides, in pertinent part:

> Judgment Creditor [4 Dakota], as the owner and holder of that certain Final Judgment of Deficiency dated October 30, 2015 entered by the Court in case No.: 3:15-cv-51-MCR/EMT,

---

[14] ECF No. 56, ¶ 11.
[15] *Referral and Order*, *4 Dakota Ventures LLC v. Seger Com. Props. LLC*, Case No. 3:15-cv-51MCR/EMT (N.D. Fla. Sept. 25, 2018), ECF No. 69.
[16] *Plaintiff's Renewed Motion to Obtain Assignment of Defendant's Rights and Interests in Case No. 2018 CA 2080 F*, *4 Dakota Ventures, LLC v. Seger Com. Props. LLC*, Case No. 3:15-cv-51MCR/EMT (N.D. Fla. Aug. 3, 2020), ECF No. 98.
[17] *Report and Recommendation* at p. 2, *4 Dakota Ventures, LLC v. Seger Com. Props. LLC*, Case No. 3:15-cv-51MCR/EMT (N.D. Fla. Nov. 2, 2020), ECF No. 115 ("Sehman [Debtor] neither filed a response in opposition when Plaintiff's motion was originally filed, nor filed a response as subsequently directed by this court's order.").
[18] *Plaintiff' 4 Dakota Ventures, LLC's Response in Opposition to Christopher Sehman's Motion to Vacate Orders Granting Motion for Assignment*, Debtor's Ex. A. ECF No. 79, p. 10.
[19] *Order*, Debtor's Ex. C, ECF No. 56-3, pp. 6–7.

is granted execution upon that certain chose in action of Christopher Sehman [Debtor] represented by his claims in Okaloosa County Circuit Court Case No. 2018 CA 2080 F (the "Chose in Action") [Schweizer Lawsuit].

The Chose in Action, and specifically all right, title and interest held or owned by Christopher Sehman therein, is hereby assigned to Judgment Creditor.

This Order shall operate as a full and complete assignment, and immediately confers upon 4 Dakota Ventures, LLC standing to seek substitution as the Plaintiff in said Circuit Court action [Schweizer Lawsuit].[20]

With the Assignment Order in hand, on January 20, 2021, 4 Dakota filed a motion in the Schweizer Lawsuit to substitute itself as plaintiff in place of Debtor ("Motion to Substitute").[21] The state court held a hearing on the Motion to Substitute on March 5, 2021. It is undisputed that the state court did not rule on the Motion to Substitute at the hearing; rather, the state court took that motion under advisement.

On March 7, 2021, Debtor filed the Chapter 11 petition commencing this case ("Petition").[22] Debtor listed 4 Dakota and Schweizer on the creditor matrix filed with the Petition.[23] The next day, March 8, 2021,

---

[20] *Id.* at p. 7.
[21] *Motion to Substitute Party Plaintiff and to Substitute Plaintiff's Counsel*, Debtor's Ex. C, ECF No. 56-3, pp. 4–5. The Substitution Motion also requested to substitute 4 Dakota's counsel in place of Debtor's counsel. *Id.*
[22] *Chapter 11 Voluntary Petition*, ECF No. 1.
[23] *Id.* at pp. 9–10.

6

Debtor's bankruptcy counsel filed suggestions of bankruptcy in the District Court Action and the Schweizer Lawsuit and served copies on Debtor's state court counsel, the attorneys, and Schweizer's counsel.[24]

On Sunday evening, April 18, 2021, about a month and a half after Debtor filed his bankruptcy Petition, Trisha Barnes, Judicial Assistant ("JA") to Hon. Jim Ward, the state court judge handling the Schweizer Lawsuit, emailed the attorneys' legal assistant requesting an order granting the Motion to Substitute heard on March 5.[25] The following Friday, April 23, 2021, the attorneys' legal assistant transmitted a proposed order to Judge Ward's JA.[26] Judge Ward signed the proposed order on Tuesday, April 27, 2021; it was entered on the docket that day at 1:08 p.m. ("Substitution Order").[27]

At 1:30 p.m. the same day, Debtor's state court counsel voiced objection to the Substitution Order by calling and emailing Judge Ward's

---

[24] *Suggestion of Bankruptcy* in the Schweizer Lawsuit Debtor's Ex. A, ECF No. 56-1, pp. 3–5; *Suggestion of Bankruptcy* in the District Court Action Debtor's Ex. B, ECF No. 56-2, pp. 3–4. The docket in the Schweizer Lawsuit reflects that attorney Jennifer H. Copus was "deactivated" as Debtor's counsel on April 27, 2021, when Debtor's bankruptcy counsel made an appearance after filing the *Suggestion of Bankruptcy*. For purposes of this ruling, references to Debtor's state court counsel are to Jennifer H. Copus.
[25] Debtor's Ex. C, ECF No. 56-3, p. 1 (email from Judge Ward's JA to the attorneys' legal assistant, copied to Debtor's state court counsel and Schweizer's attorney).
[26] *Id.* at pp. 2–3 (email from the attorney's legal assistant to Judge Ward's JA, copied to Debtor's state court counsel and Schweizer's attorney).
[27] *Order Granting Motion to Substitute Party Plaintiff and to Substitute Plaintiff's Counsel*, Debtor's Ex. D, ECF No. 56-4.

7

JA, stating, in pertinent part:

> [T]here is an automatic stay in all pending matters involving Mr. Sehman as he has filed for bankruptcy protection. As such, I do not believe this order can be properly entered at this time.
>
> Please advise if the court is agreeable to voluntarily recalling the order in light of the stay or if we should file a formal motion requesting this relief. [28]

Within one (1) minute, one of the attorneys emailed a reply, stating:

> I disagree, this order was purely ministerial as the hearing was held prior to the filing of bankruptcy.[29]

Debtor filed the instant Motion for Sanctions and his Emergency Stay Motion two (2) days later, on April 29, 2021.[30]

At a hearing on May 4, 2021, at which counsel for all parties appeared, this Court announced its ruling on Debtor's Emergency Stay Motion: that the Substitution Order was void *ab initio*, Debtor's bankruptcy estate has an interest in the Schweizer Lawsuit protected by the automatic stay, and the attorneys' submission of the Substitution Order was an act to obtain or exercise control over the Schweizer Lawsuit, in violation of 11 U.S.C. § 362(a)(3).[31] The order memorializing

---

[28] Debtor's Ex. E, ECF No. 56-5, p. 1 (the email was also addressed to the attorneys).
[29] *Id.* at p. 3 (email from Mr. Clark to Judge Ward's JA, Debtor's state court counsel, and others).
[30] ECF No. 56; ECF No. 57.
[31] ECF No. 67. The Court instructed counsel for Debtor to submit a proposed order reciting

the May 4 ruling was entered on May 7, 2021 ("Stay Order").[32] In the Stay Order, this Court also held that the state court's entry of the Substitution Order was not merely a "ministerial act."[33]

In the District Court Action, which remains pending, Debtor has filed a motion to vacate the Assignment Order.[34] In its response in opposition to that motion, filed May 11, 2021, 4 Dakota did not mention this Court's oral ruling on May 4, or the Stay Order entered May 7.[35]

## CONCLUSIONS OF LAW

Debtor's bankruptcy Petition triggered an automatic stay, applicable to all entities, of commencement or continuation of actions

---

its ruling. *Id.*

[32] *Order Granting Debtor's Emergency Motion to Enforce the Automatic Stay (Doc. 57)*, ECF No. 69.

[33] *Id.* at ¶ 5. In the Schweizer Lawsuit, on May 17, 2021, by consent of the parties the state court entered an order vacating the Substitution Order. *Consent Order Granting Motion to Vacate*, 4 Dakota's Ex. B, ECF No. 78-2.

[34] *Debtor's Notice of Filing Motion to Vacate Orders Granting Motion for Assignment in United States District Court Case*, ECF No. 54. Although the District Court Action was apparently stayed after Debtor filed his bankruptcy Petition, Debtor and 4 Dakota have continued to file pleadings in that action. *See Order, 4 Dakota Ventures, LLC v. Seger Com. Props. LLC*, Case No. 3:15-cv-51MCR/EMT (N.D. Fla. Mar. 9, 2021), ECF No. 132; *Motion to Vacate Orders Granting Motion for Assignment, 4 Dakota Ventures, LLC v. Seger Com. Props. LLC*, Case No. 3:15-cv-51MCR/EMT (N.D. Fla. Apr. 27, 2021), ECF No. 134; *Plaintiff 4 Dakota Ventures, LLC's Response in Opposition to Christopher Sehman's Motion to Vacate Orders Granting Motion for Assignment, 4 Dakota Ventures, LLC v. Seger Com. Props. LLC*, Case No. 3:15-cv-51MCR/EMT (N.D. Fla. May 11, 2021), ECF No. 136.

[35] *Plaintiff 4 Dakota Ventures, LLC's Response in Opposition to Christopher Sehman's Motion to Vacate Orders Granting Motion for Assignment*, Debtor's Ex. A, ECF No. 79, pp. 7–16.

9

against him and attempts to collect prepetition debts.[36] The automatic stay prohibits the enforcement of a prepetition judgment against Debtor or his property and any act to obtain possession of or exercise control over any of Debtor's property.[37]

Bankruptcy Code Section 362(b) sets forth certain exceptions to the automatic stay.[38] To avoid being held in violation of the automatic stay, a party's action must either be an exception enumerated in § 362(b) or the party must obtain relief from the stay under § 362(d).[39] Bankruptcy Code Section 362(k)(1) provides that "an individual injured by any willful violation of a stay . . . *shall* recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[40] The Court has already found that 4 Dakota and the attorneys violated the automatic stay. The remaining question is whether 4 Dakota's and the attorneys' stay violations were willful.

---

[36] 11 U.S.C. § 362(a)(1); *Mantiply v. Horne (In re Horne)*, 876 F.3d 1076, 1078, 1080 (11th Cir. 2017).
[37] 11 U.S.C. § 362(a)(2)–(3).
[38] 11 U.S.C. § 362(b); *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1268 (11th Cir. 2014).
[39] *In re Lyubarsky*, 615 B.R. 924, 929 (Bankr. S.D. Fla. 2020) (citing *Lodge*, 750 F.3d at 1268).
[40] 11 U.S.C. § 362(k)(1) (emphasis added); *see Horne*, 876 F.3d at 1080; *Parker v. Credit Central South, Inc. (In re Parker)*, 634 F. App'x 770, 773 (11th Cir. 2015) (pursuant to § 362(k)(1) "an award of actual damages is mandatory when the stay is willfully violated."); *In re Harrison*, 599 B.R. 173, 185 (Bankr. N.D. Fla. 2019) (Specie, J.).

### 4 Dakota and the attorneys willfully violated the automatic stay.

A debtor has the burden to prove that a stay violation was willful.[41] A violation of the stay is willful if the offending party: 1) knew the automatic stay was invoked and 2) intended to commit the actions which violated the stay.[42] Once a party and its counsel have knowledge that a bankruptcy petition has been filed, they are deemed to have knowledge that the automatic stay is in place.[43] Specific intent to violate the automatic stay is not required for a showing of willfulness; it is sufficient that the party committed the act deliberately.[44] When a party commits a willful stay violation, contempt is the appropriate remedy even if the party acted on advice of counsel.[45] A court may find a stay violation willful when a party knows that the debtor filed bankruptcy and that the bankruptcy court is available to determine whether the stay applies, but nevertheless purposely takes the action that violates the automatic stay.[46]

---

[41] *In re Harrison*, 599 B.R. at 183.
[42] *Id.* (citing *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996)).
[43] *Id.*; *see Henkel v. Lickman (In re Lickman)*, 297 B.R. 162, 191 (Bankr. M.D. Fla. 2003) ("Knowledge of the bankruptcy petition has been held to be the legal equivalent of knowledge of the automatic stay." (quoting *In re Lile*, 103 B.R. 830, 837 (Bankr. S.D. Tex. 1989)).
[44] *In re Sanders,* Case No. 8:20-bk-02731-RCT, 2020 WL 6020347, at *2 (Bankr. M.D. Fla. Sept. 15, 2020); *In re Daya Medicals, Inc.*, 560 B.R. 855, 859 (Bankr. S.D. Fla. 2016).
[45] *In re Harrison*, 599 B.R. at 183.
[46] *In re Fontaine*, 603 B.R. 94, 107–08 (Bankr. D.N.M. 2019).

It is undisputed that 4 Dakota and the attorneys received notice of Debtor's bankruptcy case well before the state court requested the Substitution Order. Once they received notice of Debtor's bankruptcy, they should have sought permission or clarification from this Court before taking any further action against Debtor or his property.[47] Rather than doing so, the attorneys submitted the Substitution Order for 4 Dakota, knowing that Judge Ward had not decided whether to enter such an order before Debtor filed his bankruptcy Petition. This act was deliberate and was in violation of the stay.

After the state court entered the Substitution Order, the attorneys furthered the initial stay violation by opposing Debtor's request for the state court to vacate that order; they also erroneously advised Judge Ward that entry of the order was "purely ministerial." By taking those actions and failing to request relief from this Court, 4 Dakota and the attorneys assumed the risk that this Court could assess damages against them for willful stay violations.[48]

---

[47] *In re Daya Medicals, Inc.*, 560 B.R. at 864 (citing *In re Lile*, 103 B.R. at 837; *Lickman*, 297 B.R. at 192–93).

[48] *Lickman*, 297 B.R. at 193 (citing *In re Lile*, 103 B.R. at 837). If Debtor later proves that Schweizer made all decisions for and was, in essence, the alter ego of 4 Dakota, Schweizer may become jointly and severally liable for damages for willful violation of the stay.

With knowledge of the debtor's bankruptcy the creditor in *In re Harrison*, through its state court counsel, urged a clerk of court to conduct a post-petition foreclosure sale in violation of the automatic stay.[49] After that, the creditor changed the locks on the debtor's home.[50] When the self-represented debtor brought the stay violations to this Court's attention, the creditor and its bankruptcy attorneys continued the willful stay violations by making false and misleading misrepresentations to this Court and taking no action to undo the foreclosure sale.[51] That conduct resulted in a significant damage award against the creditor and its bankruptcy attorneys.[52]

Similarly, after 4 Dakota and the attorneys took deliberate steps in violation of the automatic stay, the attorneys made a material misrepresentation to the district court. In opposition to Debtor's motion to vacate the Assignment Order in the District Court Action the attorneys wrote: "The Okaloosa Action [Schweizer Lawsuit] was never part of the bankruptcy estate because the debtor's interest was transferred by this

---

[49] *In re Harrison*, 599 B.R. 173, 179–80 (Bankr. N.D. Fla. 2019) (Specie, J.).
[50] *Id.* at 180.
[51] *Id.* at 184–85. A creditor and its counsel have the affirmative duty to undue actions taken in violation of the stay. *Id.* at 183; *In re Lyubarsky*, 615 B.R. at 929.
[52] *In re Harrison*, 599 B.R. at 185–92 (assessing actual and punitive damages under § 362(k) and additional damages under §§ 105(a) and 362(k)).

13

Court to [4 Dakota] long before the bankruptcy filing."[53] The attorneys made this statement with knowledge that this Court had ruled exactly the opposite at a hearing the previous week.[54]

### 4 Dakota's and the attorneys' subjective belief that the automatic stay did not apply is irrelevant to a finding of willfulness.

4 Dakota and the attorneys argue that they did not willfully violate the automatic stay because they were "under the impression that the order submitted to the state court" in the Schweizer Lawsuit was a ministerial act.[55] As this and other bankruptcy courts have held, a belief that an action may not be a stay violation is irrelevant to a determination that the stay violation is willful.[56]

---

[53] *Plaintiff 4 Dakota Ventures, LLC's Response in Opposition to Christopher Sehman's Motion to Vacate Orders Granting Motion for Assignment*, Debtor's Ex. A, ECF No. 79, p. 11; *Plaintiff 4 Dakota Ventures, LLC's Response in Opposition to Christopher Sehman's Motion to Vacate Orders Granting Motion for Assignment* at p. 5, *4 Dakota Ventures, LLC v. Seger Com. Props. LLC*, Case No. 3:15-cv-51MCR/EMT (N.D. Fla. May 11, 2021), ECF No. 136 (arguing that the court-ordered assignment of Debtor's interest in the Schweizer Lawsuit had become final before Debtor filed bankruptcy).

[54] Debtor has not asserted that this misrepresentation to the district court is a stay violation. Rather, Debtor presents this misrepresentation to the district court as additional evidence of 4 Dakota's and the attorneys' unapologetic demeanor and the willfulness of their behavior.

[55] ECF No. 78, ¶ 8.

[56] *In re Harrison*, 599 B.R. at 183 (noting that a creditor's and its counsel's "subjective belief that the stay might not apply is irrelevant. It is sufficient that parties had actual knowledge of the bankruptcy case."); *In re Daya Medicals, Inc.*, 560 B.R. at 859 ("A good faith belief in a right to property is not relevant to the Court's determination of whether a violation of the stay was willful."); *In re Banks*, 521 B.R. 417, 425 (Bankr. M.D. Fla. 2014) ("Whether a creditor believes that the automatic stay is inapplicable to its conduct is irrelevant to the question of whether a stay violation has occurred."); *Lickman*, 297 B.R. at 191 ("The motivation or belief of the party charged with violating the automatic stay, however, is irrelevant to the requirement that the action be taken willfully."); *see In re Fontaine*, 603 B.R. at 106–08 (finding willful violation despite the creditor's belief that its actions were a

In *In re Sanders,* after the creditor received notice of the debtor's bankruptcy and its attorneys filed an appearance in the bankruptcy case, the same attorneys filed a motion in state court seeking to hold the debtor in contempt.[57] The debtor then asked the bankruptcy court to hold the creditor in contempt and assess actual and punitive damages pursuant to 11 U.S.C. § 362(k) for a willful violation of the stay.[58] The creditor maintained that filing the contempt motion was not in violation of the stay or wrongful; it further argued that it had not willfully violated the stay because it had no intent to do so.[59] The bankruptcy court accepted the creditor's attorneys' claims that filing the state court contempt motion was a "mistake," but found that the mistake of law was "no excuse" and held the stay violation to be willful.[60]

In *Sanders* the debtor sought sanctions against only the creditor, and not its attorneys.[61] By contrast, and like Debtor here, the debtors in

---

ministerial act).

[57] *In re Sanders,* Case No. 8:20-bk-02731-RCT, 2020 WL 6020347, at *1 (Bankr. M.D. Fla. Sept. 15, 2020).
[58] *Id.*
[59] *Id.* at *1–2.
[60] *Id.* at *3. The bankruptcy court in *Sanders* acknowledged the circuit split on whether the recent U.S. Supreme Court decision *Taggart v. Lorenzen* change the willfulness standard under 11 U.S.C. § 362(k). *Id.* at *2–3 (citing *Taggart v. Lorenzen,* 139 S. Ct. 1795 (2019)). The court declined to weigh in on this circuit split because it found that under either standard, traditional or *Taggart*, the creditor's actions were willful. *Id.* at *3.
[61] *Id.* The bankruptcy court noted that the state court motion was filed by the creditor's attorneys as "authorized agents" of the creditor. *Id.* at *2.

*In re Lyubarsky*, sought § 362(k) damages against the creditor and its attorney.[62] The court in *Lyubarsky* found that the creditor and its attorney willfully violated the stay when, during what the creditor's attorney claimed were "settlement negotiations," the attorney made a demand for payment of $250,000.00 coupled with a threat.[63] For that reason, the *Lyubarsky* court awarded the debtors compensatory damages for emotional distress, reasonable attorneys' fees and costs, and punitive damages.[64]

Whether the attorneys in this case, one of whom has appeared in this Court extensively over the years, truly believed that submitting the Substitution Order was a ministerial act is questionable. They and 4 Dakota knew full well that Judge Ward had not ruled on the Motion to Substitute before Debtor filed his bankruptcy Petition. Between hearing the motion and entering the Substitution Order, Judge Ward had to deliberate and exercise judicial discretion. Judge Ward's request for and signing of the Substitution Order was clearly not a ministerial act.[65]

---

[62] *In re Lyubarsky*, 615 B.R. 924, 928 (Bankr. S.D. Fla. 2020).
[63] *Id.* at 930–31.
[64] *Id.* at 928.
[65] *E.g., McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1080 (9th Cir. 2000) ("Ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute continuations of [a judicial] proceeding."); *Roberts v. Comm'r*, 175 F.3d 889, 897 (11th Cir. 1999) ("[M]inisterial acts . . . entail no

4 Dakota cites *Shakhrani v. Escala* in support of its argument that submitting and obtaining the Substitution Order was a ministerial act.[66] 4 Dakota's reliance on *Shakhrani* is misplaced. In *Shakhrani*, a state court judge announced a ruling against the plaintiff from the bench.[67] The plaintiff then filed bankruptcy.[68] After receiving notice that the plaintiff's bankruptcy had been dismissed, but before receiving notice that the bankruptcy case had been reinstated, the state court judge entered an order memorializing his oral ruling.[69] The plaintiff then sued

---

deliberation, discretion, or judicial involvement . . . ."); *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 974 (1st Cir. 1997) ("[Ministerial] acts can usefully be visualized as the antithesis of judicial acts, inasmuch as the essence of a judicial act is the exercise of discretion or judgment."); *Williams v. Fulton Cnty School Dist.,* 181 F. Supp. 3d 1089, 1143 (N.D. Ga. 2016) (a ministerial act requires the execution of a specify duty while a discretionary act calls for exercise of personal deliberation and judgment, "which in turn entails examining the facts, researching reasoned conclusions"); *In re Fontaine*, 603 B.R. at 106 ("[A]n act requiring the exercise of judicial deliberation, discretion or judgment is not a ministerial act that is outside the purview of the automatic stay."); *In re Horned Dorset Primavera, Inc.*, Case No. 15-03837 (ESL), 2018 WL 3629952, at *13 (Bankr. D.P.R. July 27, 2018) (a court's "ordering entry of a judgment involves a judicial function that goes beyond a merely ministerial act"); *In re Solar Tr. of Am., LLC*, Case No., 12-11136(KG), 2015 WL 1011548, at *3 (Bankr. D. Del. Jan. 12, 2015) (a judge's issuance of an opinion is not a ministerial act); *In re Braught*, 307 B.R. 399, 403–04 (Bankr. S.D.N.Y. 2004) (judge was exercising a judicial function when he signed a judgment a month after the debtors filed for bankruptcy); *City of Jacksonville Beach v. BCEL 4, LLC,* 262 So. 3d 835, 836 (Fla. 1st DCA 2018) (per curiam) (citing applicable Florida cases); *Rhea v. Dist. Bd. of Trs. of Santa Fe Coll.,* 109 So. 3d 851, 855 (Fla. 1st DCA 2013) ("For purposes of mandamus relief, a duty or act is ministerial when no room exists for the exercise of discretion and the law directs the required performance.").
[66] *Shakhrani v. Escala*, Case No. 05-cv-4746(PGS), 2006 WL 2376746 (D.N.J. Aug. 16, 2006).
[67] *Id.* at *2. The ruling included an award of attorneys' fees against the debtor, who had filed a total of fifteen (15) different lawsuits against various state actors, including the state court judge and opposing counsel. *Id.* at *1.
[68] *Id.* at *2.
[69] *Id.* at *3.

17

the state court judge and opposing counsel in federal district court, alleging (among other things) that the judge's written order and the attorneys' service of that order violated the automatic stay.[70] The district court dismissed the suit against the state court judge and opposing counsel for lack of merit, holding that the issuance and service of the post-petition order were ministerial acts.[71] That is not what happened here.

Even if it was unclear to 4 Dakota and the attorneys that entry of an order granting a motion made, but not decided, prepetition was not a ministerial act, with very little effort they could have ascertained the truth. Myriad cases describe what actions fall under the category of "ministerial."[72] While a ministerial act is a legal exception to the automatic stay, the facts present here do not justify reliance on this exception. Further, many courts have held that entry of a written order, even if it mirrors a prepetition ruling from the bench, is not ministerial because it still requires some degree of judicial discretion.[73]

---

[70] *Id.* at *2.
[71] *Id.* at *3 (noting that "simple and ministerial acts in litigation that occur post filing do not constitute a continuation of the judicial proceeding in violation of the automatic stay," and that "certain post filing actions are permissible where the proceeding technically violates the stay but where the interests of equity and judicial economy dictate otherwise.").
[72] *See* cases cited *supra* note 65.
[73]*See, e.g., In re Fontaine*, 603 B.R. at 107 (state court's entry of foreclosure judgment post-petition based on a prepetition ruling was not ministerial where judge had to review debtor's objection to the form of the judgment); *GemCap Lending I, LLC v. Bateman (In re*

As an alternative to their argument that submission of the Substitution Order was a ministerial act, the attorneys contend that submitting the Substitution Order was not willful because all communication was between one of their legal assistants and Judge Ward's JA. This argument—"my assistant did it"—is offensive. This argument is also wrong. In Florida, attorneys may ethically delegate work to legal assistants, but they must review and are responsible for their employees' work product.[74]

## CONCLUSION

Debtor has met his burden to prove that 4 Dakota and the attorneys knew the automatic stay was in place and intended every act that violated the stay. This Court is mandated by 11 U.S.C. § 362(k)(1) to award Debtor his actual damages, including costs and attorneys' fees. Debtor has also requested an award of punitive damages, which the

---

*Naturescape Holding Grp. Int'l, Inc.)*, Case No. 16-00982, 2018 WL 5099706, at *14 n.85 (Bankr. D. Haw. Oct. 2, 2018) (disagreed with a state court's ruling that entry of an order was post-petition was ministerial because "a judge is always free to enter a written order that varies from the oral ruling."); *Corbett v. Kiraz (In re Kiraz)*, Case No. 11-35743-tmb7, Adv. No. 11-03294-tmb, 2012 WL 1120379, at *2 (Bankr. D. Or. Apr. 3, 2012) (written final judgment entered post-petition was not a ministerial act because "the trial court judge retained the discretion to alter his oral ruling in any way he saw fit.").

[74] R. Regulating Fla. Bar 4–5.3(c) ("Although paralegals or legal assistants may perform the duties delegated to them by the lawyer without the presence or active involvement of the lawyer, the lawyer must review and be responsible for the work product of the paralegals or legal assistants.").

parties are to address in supplemental briefs. In addition to the matters determined in the Sanctions Order, for the reasons stated herein, it is

ORDERED:

1. The stay violations of 4 Dakota Ventures, LLC, Robert O. Beasley, Dewitt D. Clark, and Litvak Beasley Wilson & Ball, LLP were willful.

2. Debtor is entitled to an award of actual damages, including attorneys' fees and costs, pursuant to 11 U.S.C. § 362(k)(1), against 4 Dakota and the attorneys. Debtor may also be entitled to punitive damages.

3. After the parties have filed additional briefing as provided in the Sanctions Order (ECF No. 85), the Court will rule on the papers or schedule the issue of damages for further hearing(s).

DONE and ORDERED on  August 10, 2021            .

KAREN K. SPECIE
Chief U. S. Bankruptcy Judge

cc: all parties in interest.