# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

IN RE:

CHRISTOPHER SCOTT SEHMAN     CASE NO.: 21-30141-KKS
                                   CHAPTER: 11
                                   SUBCHAPTER V

    Debtor.

_____/

## ORDER DENYING *MOTION FOR RELIEF FROM ORDER GRANTING DEBTOR'S MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY AND RELATED FINDINGS OF FACT AND CONCLUSIONS OF LAW* (ECF NO. 123)

Currently before the Court is the second of two motions ("Second Relief Motion")[1] filed by 4 Dakota Ventures, LLC ("4 Dakota"), seeking relief from orders of this Court. In the Second Relief Motion, 4 Dakota asserts that the Court made a fundamental error of law in ruling that 4 Dakota willfully violated the automatic stay and should be sanctioned under 11 U.S.C. § 362(k)(1).[2] Debtor opposes the Second Relief Motion.[3]

---

[1] *Motion for Relief from Order Granting Debtor's Motion for Sanctions for Violation of the Automatic Stay and Related Findings of Fact and Conclusions of Law*, ECF No. 123. The Court has already denied 4 Dakota's first relief motion. *Motion for Relief from Order Granting Debtor's Emergency Motion to Enforce the Automatic Stay*, ECF No. 108 ("First Relief Motion"); *Order Denying Motion for Relief from Order Granting Debtor's Emergency Motion to Enforce the Automatic Stay (ECF No. 108)*, ECF No. 181.

[2] The Second Relief Motion challenges the Court's conclusions of law in the *Order Granting Debtor's Motion for Sanctions for Violation of the Automatic Stay (Doc. 56)*, ECF No. 85 and *Findings of Fact and Conclusions of Law in Support of Order Granting Debtor's Motion for Sanctions for Violation of the Automatic Stay (Doc. 56) (ECF No. 85)*, ECF No. 98.

[3] *Opposition to Motion for Relief from Order Granting Debtor's Motion for Sanctions for Violation of the Automatic Stay and Related Findings of Fact and Conclusions of Law (Doc.*

NJM

The Court held a hearing on November 17, 2021, at which counsel for all parties appeared.

Having carefully reviewed the record, the parties' written and oral arguments, and applicable statutory and case law, for the reasons set forth below the Court has determined that its prior ruling is correct, and the Second Relief Motion is due to be denied.

## BACKGROUND

In prior rulings this Court thoroughly described the disputes between Debtor, 4 Dakota, and William T. Schweizer ("Schweizer") and the ensuing, ongoing litigation in the District Court Action, the Schweizer Lawsuit, and this Bankruptcy Case.[4] The facts most relevant to the instant ruling are:[5]

In January of 2021, the district court entered an order in the District Court Action "granting execution upon" the Schweizer Lawsuit

---

123)*, ECF No. 131. The Court has also considered *4 Dakota Ventures, LLCs' Response to Debtor's Opposition to Motion for Relief from Order Granting Debtor's Motion for Sanctions for Violation of the Automatic Stay and Related Findings of Fact and Conclusions of Law (ECF No. 123)*, ECF No. 143.

[4] *Findings of Fact and Conclusions of Law in Support of Order Granting Debtor's Motion for Sanctions for Violation of the Automatic Stay (Doc. 56) (ECF No. 85)*, ECF No. 98 ("FFCL"); *In re Sehman*, 632 B.R. 846 (Bankr. N.D. Fla. 2021) (Specie, J.). Although 4 Dakota disputes this Court's legal conclusion, it does not dispute this Court's findings of fact. ECF No. 123.

[5] The Court omits citations to the record for the facts set forth in this Order because those citations are contained in its FFCL.

and containing language assigning the Schweizer Lawsuit to 4 Dakota ("Assignment Order").[6] With the Assignment Order in hand, 4 Dakota filed a motion in the Schweizer Lawsuit to substitute itself as plaintiff in place of Debtor ("Motion to Substitute").

On Friday, March 5, 2021, in the Schweizer Lawsuit, the state court held a hearing on 4 Dakota's Motion to Substitute and took that matter under advisement. Two (2) days later, on Sunday, March 7, Debtor filed a petition commencing this Bankruptcy Case. Debtor listed 4 Dakota and Schweizer on the creditor matrix filed with the petition. On Monday, March 8, Debtor's bankruptcy counsel filed suggestions of bankruptcy in the District Court Action and the Schweizer Lawsuit and served copies on 4 Dakota's counsel of record in those cases, Robert O. Beasley and DeWitt D. Clark, of Litvak Beasley Wilson & Ball, LLP (collectively the "Litvak Beasley attorneys"), who first appeared in this Bankruptcy Case on April 9, 2021.[7]

More than a month after Debtor filed and 4 Dakota had notice of

---

[6] The district court vacated the Assignment Order on September 28, 2021. *Order, 4 Dakota Ventures, LLC v. Seger Com. Props., LLC*, Case No. 3:15-cv-51MCR/EMT (N.D. Fla. Sept. 28, 2021), ECF No. 141.

[7] *Notice of Appearance of Creditor 4 Dakota Ventures, LLC & Request for Copies*, ECF Nos. 43 & 44.

this Bankruptcy Case, on Sunday, April 18, 2021, the judge presiding over the Schweizer Lawsuit requested the Litvak Beasley attorneys to submit an order granting the Motion to Substitute. Five (5) days later, on Friday, April 23, at 4:57 p.m., the Litvak Beasley attorneys submitted a proposed order granting the Motion to Substitute ("Substitution Order").

The state court entered the Substitution Order on the docket in the Schweizer Lawsuit on Tuesday, April 27 at 1:08 p.m. At 1:30 p.m. the same day, Debtor's state court counsel called the state court judge's chambers and wrote the judge and the Litvak Beasley attorneys the following:

> [T]here is an automatic stay in all pending matters involving Mr. Sehman [Debtor] as he has filed for bankruptcy protection. As such, I do not believe this order can be properly entered at this time.
>
> Please advise if the court is agreeable to voluntarily recalling the order in light of the stay or if we should file a formal motion requesting this relief.[8]

---

[8] Debtor's Ex. E, ECF No. 56-5, p. 1. In its prior ruling, this Court stated that the Substitution Order was submitted to the state court "over protest by Debtor's state court counsel." ECF No. 181, p. 7. But Debtor's state court counsel voiced that protest after, not before, 4 Dakota and the Litvak Beasley attorneys submitted, and the state court entered the Substitution Order.

One of the Litvak Beasley attorneys emailed a reply one (1) minute later, stating: "I disagree, this order was purely ministerial as the hearing was held prior to the filing of bankruptcy."[9]

Two (2) days later, on April 29, Debtor filed two (2) motions in this Bankruptcy Case: (1) an emergency motion to enforce the automatic stay ("Emergency Stay Motion"),[10] and (2) a motion for sanctions against Schweizer, 4 Dakota, and the Litvak Beasley attorneys for willful violation of the automatic stay ("Motion for Sanctions").[11] After a hearing, in May of 2021 the Court granted Debtor's Emergency Stay Motion and ruled that (1) Debtor's bankruptcy estate has an interest in the Schweizer Lawsuit; (2) the submission of the Substitution Order was an act to obtain or exercise control over the Schweizer Lawsuit, in violation of 11 U.S.C. § 362(a)(3); and (3) the Substitution Order was void *ab initio*, having been entered in violation of the automatic stay.[12] In June of 2021, the Court granted Debtor's Motion for Sanctions and ruled that submitting the Substitution Order post-petition was a willful violation of

---

[9] *Id.* at p. 3.
[10] *Debtor's Emergency Motion to Enforce the Automatic Stay*, ECF No. 57.
[11] *Debtor's Motion for Sanctions for Violation of the Automatic Stay*, ECF No. 56.
[12] *Order Granting Debtor's Emergency Motion to Enforce the Automatic Stay (Doc. 57)*, ECF No. 69.

the automatic stay ("Sanctions Order").[13] The Court issued its findings of fact and conclusions of law in support of the Sanctions Order on August 10, 2021.[14] 4 Dakota, through new counsel, filed two (2) Rule 60(b) motions, including the instant Second Relief Motion.[15]

# DISCUSSION

In the Second Relief Motion, 4 Dakota claims entitlement to relief under Rule 60(b)(1), Fed. R. Civ. P, which provides, in pertinent part:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> > (1) mistake, inadvertence, surprise, or excusable neglect . . . .[16]

Rule 60(b)(1) encompasses mistakes of fact as well as mistakes of law, including a federal judge's possible mistake in the application of the

---

[13] *Order Granting Debtor's Motion for Sanctions for Violation of the Automatic Stay (Doc. 56)*, ECF No. 85. Debtor also claims that 4 Dakota is Schweizer's alter ego and seeks damages against Schweizer under 11 U.S.C. § 362(k) on the basis that Schweizer controls, directly or indirectly, 4 Dakota. The Court reserved ruling on Debtor's allegations as to Schweizer in its Sanctions Order. *Id.* at ¶ 4.

[14] ECF No. 98. New counsel for 4 Dakota filed appearances after the Court issued its rulings against 4 Dakota and the Litvak Beasley attorneys. *See Notice of Appearance*, ECF Nos. 105 & 106 (attorneys Sarah Walton and Phillip A. Bates, Phillip A. Bates, P.A., collectively 4 Dakota's "new counsel"). To date, the Litvak Beasley attorneys have not filed a motion to withdraw as counsel for 4 Dakota.

[15] ECF Nos. 108 & 123. The Court denied 4 Dakota's First Relief Motion. ECF No. 181. 4 Dakota has appealed that ruling. *4 Dakota Ventures, L.L.C.'s Notice of Appeal*, ECF No. 197.

[16] Fed. R. Civ. P. 60(b)(1), applicable in bankruptcy cases pursuant to Fed. R. Bankr. P. 9024.

law.[17] Motions under Rule 60(b) are directed to the sound discretion of the Court.[18]

By challenging this Court's application of the law, 4 Dakota must show that this Court made an obvious legal error.[19] For the most part, 4 Dakota reiterates here the same argument advanced in its First Relief Motion: that Debtor did not have any interest in the Schweizer Lawsuit as of the petition date, so that "chose in action" was not § 541 property of the estate subject to the automatic stay. Based on that premise, which the Court has already rejected,[20] 4 Dakota argues that it is not subject to sanctions under § 362(k)(1) for willfully violating the automatic stay.

## The Court properly determined that 4 Dakota willfully violated the automatic stay.

4 Dakota does not dispute the primary facts underlying the Court's ruling that it willfully violated the automatic stay. Those facts are that: 4 Dakota and the Litvak Beasley attorneys knew Debtor had commenced

---

[17] *See, e.g., Nisson v. Lundy*, 975 F.2d 802, 806 (11th Cir. 1992); *Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir. 1987); *In re Bryan Road, LLC*, 389 B.R. 297, 300 (Bankr. S.D. Fla. 2008).

[18] *United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1318 (11th Cir. 1997).

[19] *Bryan Road*, 389 B.R. at 300 (citing *Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir. 1977)).

[20] *See* ECF No. 181.

this Bankruptcy Case; knew the automatic stay went into effect when Debtor filed his Chapter 11 petition; knew that Debtor claimed an ownership intertest in the Schweizer Lawsuit; knew that the state court judge had not ruled on the Substitution Motion before Debtor filed bankruptcy; and submitted the Substitution Order to the state court anyway.

A debtor has the burden to prove that a stay violation was willful.[21] In the Eleventh Circuit, a violation of the automatic stay is willful if the offending party "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay."[22] Once the offending party has actual knowledge of the bankruptcy case, it is deemed to have knowledge that the automatic stay is in place.[23] Specific intent to violate the automatic stay is not required for a showing of willfulness; it is sufficient that a party "intentionally committed the violative act."[24]

A party violates the stay if it exercises control over property to

---

[21] *In re Harrison*, 599 B.R. 173, 183 (Bankr. N.D. Fla. 2019) (Specie, J.).

[22] *Id.* (citing *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996)).

[23] *Id.; Henkel v. Lickman (In re Lickman)*, 297 B.R. 162, 191 (Bankr. M.D. Fla. 2003) ("Knowledge of the bankruptcy petition has been held to be the legal equivalent of knowledge of the automatic stay.").

[24] *Jove Engineering,* 92 F.3d at 1555; *Gordon v. Taylor (In re Taylor)*, 430 B.R. 305, 313 (Bankr. N.D. Ga. 2010); *Kapila v. Clark (In re Trafford Distrib. Ctr., Inc.)*, 414 B.R. 849, 857 (Bankr. S.D. Fla. 2009).

which the debtor has even an arguable claim of right.[25] That violation rises to the level of willful when the offending party knows about the debtor's bankruptcy case and knows, or should have known, that the bankruptcy court is available to determine whether the stay applies, but nevertheless deliberately takes action that violates the stay.[26]

4 Dakota attempts to excuse the post-petition submission of the Substitution Order in violation of the automatic stay by arguing that the district court's Assignment Order was proof that Debtor had no interest in the Schweizer Lawsuit.[27] This argument is disingenuous at best. Neither 4 Dakota nor the Litvak Beasley attorneys used this excuse when they submitted the Substitution Order to the state court judge. Nor did they insist at that time that the automatic stay did not apply or that Debtor had no interest in the Schweizer Lawsuit. Instead, when Debtor's state court counsel wrote that entry of the Substitution Order was a violation of the stay, 4 Dakota's and the Litvak Beasley attorneys' only

---

[25] *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 300 (5th Cir. 2005) ("Here, we face the question whether the creditor violates the stay if, without permission of the bankruptcy Court, he forecloses on an asset to which the debtor has only an arguable claim of right . . . We answer in the affirmative . . . ."); *In re Daya Medicals, Inc.*, 560 B.R. 855, 858 (Bankr. S.D. Fla. 2016) ("[A] dispute as to a debtor's property rights does not obliviate the effect of the automatic stay. To the contrary, where it is unclear whether a debtor in bankruptcy has an interest in property, parties must act with caution.").

[26] *In re Fontaine*, 603 B.R. 94, 107–08 (Bankr. D.N.M. 2019).

[27] ECF No. 123, p. 17.

9

response was that submission and issuance of the Substitution Order was "purely ministerial."[28]

In support of its position that it did not willfully violate the automatic stay, 4 Dakota cites *In re Daya Medicals, Inc.*[29] 4 Dakota's reliance on *Daya Medicals* is misplaced; the ruling in *Daya Medicals* refutes 4 Dakota's position.

In *Daya Medicals*, the state court entered an order appointing a receiver over all the debtor's and its principals' intellectual property.[30] On notice of the debtor's bankruptcy and that the debtor claimed ownership of all intellectual property covered in the order, including that owned by the principals, the receiver continued to demand that the principals assign all of their intellectual property to him.[31] The debtor filed an emergency motion with the bankruptcy court asserting, among other things, that the receiver's demands on the principals violated the automatic stay.[32] The receiver disagreed, arguing that because he was seeking an assignment of the principals' intellectual property, not the

---

[28] A ministerial act is a legal *exception* to the automatic stay; it does not render the automatic stay inapplicable.
[29] *In re Daya Medicals, Inc.*, 560 B.R. 855 (Bankr. S.D. Fla. 2016).
[30] *Id.* at 859–60.
[31] *Id.* at 860–62.
[32] *Id.* at 857.

debtor's, his actions were not in violation of the automatic stay.[33] The

bankruptcy court ruled for the debtor and found that the receiver's

attempts to obtain assignments from the principals constituted willful

violations of the automatic stay.[34]

The facts here are remarkably similar to those before the *Daya*

*Medicals* court. Like 4 Dakota here, the receiver in *Daya Medicals*

attempted to justify his actions by arguing that he relied on language in

an order entered by another court.[35] The bankruptcy court in *Daya*

*Medicals* did not buy the receiver's argument, stating:

> [The receiver] relies heavily on the language in the
> Receivership Order stating "the Receiver will have the power
> and duty to take custody and possession of the assets of [the
> Principals and the Debtor]" to support his view that it was
> permissible for him to seek assignments from the Principals.
> However, once [the receiver] was put on notice of the
> bankruptcy filing here, and the Debtor's claim that it owned
> all of the intellectual property, he was under a duty to seek
> permission from this Court before taking any action with
> regard to the intellectual property.[36]

---

[33] *Id.* at 863.
[34] *Id.* at 863–64.
[35] *Id.* at 864.
[36] *Id.* (citing *In re Lile*, 103 B.R. 830, 837 (Bankr. S.D. Tex. 1989) ("Once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the automatic stay."); *Lickman*, 297 B.R. at 192–93 (finding that "the defendants had an affirmative obligation to seek clarification from the bankruptcy court as to the scope of the automatic stay before proceeding with any of the actions that they took outside the bankruptcy court.")).

4 Dakota mischaracterizes the key similarity between the facts here and those in *Daya Medicals*. 4 Dakota asserts that the receiver in *Daya Medicals* knew that the debtor's interest in the property he was attempting to seize was property of the bankruptcy estate.[37] That is incorrect. The receiver in *Daya Medicals* did not *know* that the intellectual property he attempted to seize was property of the bankruptcy estate; he knew exactly what 4 Dakota knew here—that the debtor *claimed to own* the property.[38]

Like the receiver in *Daya Medicals*, 4 Dakota should have sought permission or clarification from this Court before taking *any* action to obtain control or possession of the Schweizer Lawsuit.[39] Instead, by submitting the Substitution Order to the state court in the face of legal uncertainty, 4 Dakota and the Litvak Beasley attorneys "acted at their own peril" and now face the consequences that attend their decision.[40]

Based on the undisputed facts, the Court's conclusion that Debtor

---

[37] ECF No. 123, pp. 16–17.

[38] *Daya Medicals,* 560 B.R. at 863–64.

[39] 4 Dakota now concedes that a wiser course of action would have been to seek stay relief. ECF No. 123, p. 18.

[40] *Theokary v. Abbatiello (In re Theokary)*, 444 B.R. 306, 323 n.30 (Bankr. E.D. Pa. 2011) (citing *Allentown Ambassadors, Inc. v. Ne. Am. Baseball, LLC (In re Allentown Ambassadors, Inc.)*, 361 B.R. 422, 459 (Bankr. E.D. Pa. 2007); *In re Daniels*, 316 B.R. 342, 353 (Bankr. D. Idaho 2004)).

met his burden to prove that 4 Dakota willfully violated the automatic stay was legally correct.

### 4 Dakota is liable for the willful actions of the Litvak Beasley attorneys.

At the hearing on the Second Relief Motion, 4 Dakota argued that it should not be held accountable for willfully violating the stay because of actions by the Litvak Beasley attorneys. This argument must also fail.

The United States Supreme Court has long held that "clients must be held accountable for the acts and omissions of their attorneys."[41] This tenet applies even when "counsel's unexcused conduct imposes an unjust penalty on the client."[42] Faced with an argument similar to the one 4 Dakota champions here, the Supreme Court concluded that holding clients accountable for their lawyers' acts and omissions is proper:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is

---

[41] *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 113 S. Ct. 1489, 1499 (1993).

[42] *Link v. Wabash R.R.*, 370 U.S. 626, 633 (1962) (upholding the dismissal of a lawsuit as a result of the attorney's failure to attend a pretrial conference); *United States v. Boyle*, 469 U.S. 241 (1985) (holding client could be penalized for its counsel's tardy filing of a tax return).

considered to have notice of all facts, notice of which can be charged upon the attorney.[43]

Consistent with Supreme Court precedent, bankruptcy courts, including those in the Middle and Southern Districts of Florida, have held clients accountable for their attorneys' willful stay violations.[44] The result here should be no different.

## CONCLUSION

In the face of Debtor's bankruptcy and claim of ownership of the Schweizer Lawsuit, 4 Dakota and the Litvak Beasley attorneys willfully submitted the Substitution Order, erroneously assuring the state court judge that entry of that order was "purely ministerial." 4 Dakota should

---

[43] *Pioneer Inv. Servs. Co.*, 113 S.Ct. at 1499 (quoting *Link*, 370 U.S. at 633–34).

[44] *See, e.g., Bailey Tool & Mfg. Co. v. Republic Bus. Credit, LLC (In re Bailey Tool & Mfg. Co.)*, Case No. 16-30503-SGJ-7, Adv. No. 16-03025-SGJ, 2021 WL 6101847, at *49 (Bankr. N.D. Tex. Dec. 23, 2021) (holding that creditor willfully violated the automatic stay when its insolvency counsel directed one of the debtor's customers to pay funds to the creditor during the bankruptcy and to pressure the debtors to give the creditor a release); *In re Lyubarksy*, 615 B.R. 924, 930–31 (Bankr. S.D. Fla. 2020) (finding that both the creditor and its attorney willfully violated the automatic stay when the attorney made a demand for payment coupled with a threat); *In re LeGrand*, 612 B.R. 604, 618 (Bankr. E.D. Cal. 2020) (holding the creditor liable for its attorney's acts and omission that violated the automatic stay); *In re Stringer*, 586 B.R. 435, 446 (Bankr. S.D. Ohio 2018) (finding that the creditor was equally responsible for his attorney's actions that violated the automatic stay); *In re Lewis*, Case No. 8:16-bk-07166-RCT, Case No. 8:17-bk-01523-RCT, 2017 WL 11569062, at *3–4 (Bankr. M.D. Fla. Dec. 29, 2017) (finding that the creditor/client is liable for the acts of his agent/attorney in violating the stay); *Theokary v. Abbatiello (In re Theokary)*, 444 B.R. 306, 323–24 (Bankr. E.D. Pa. 2011) (finding that under the general principles of agency law "a creditor-principal is liable under § 362(k) for the acts of an agent who willfully violates the automatic stay taken when those acts are within the scope of their principal-agent relationship."); *In re Banderas*, 236 B.R. 841, 846 (Bankr. M.D. Fla. 1999) (finding that a creditor was liable for its attorney's actions that constituted a willful violation).

be, and is, accountable along with the Litvak Beasley attorneys for this willful violation of the automatic stay.

For the reasons stated, it is

ORDERED: The *Motion for Relief from Order Granting Debtor's Motion for Sanctions for Violation of the Automatic Stay and Related Findings of Fact and Conclusions of Law* (ECF No. 123) is DENIED.

DONE and ORDERED on ___February 23, 2022___.

KAREN K. SPECIE
Chief U. S. Bankruptcy Judge

Counsel for 4 Dakota Ventures, LLC is directed to serve a copy of this Order on interested parties and file a proof of service within three (3) days of entry of this Order.